**A. J. ARMSTRONG COMPANY, Inc.**

**v.**

**LINCOLN FINANCE & THRIFT, INC. OF KNOX COUNTY, Harold Chandler and Glenn Chandler.**

**Civ. A. No. 6078.**

United States District Court
E. D. Tennessee, N. D.

Sept. 12, 1968.

---

Franklin J. McVeigh, R. Arnold Kramer, Knoxville, Tenn., for plaintiff.

William C. Morrell, John T. O'Connor, Child & Child, Knoxville, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

Plaintiff, A. J. Armstrong Company, Inc. (Armstrong) filed a complaint against Lincoln Finance and Thrift, Inc. (Lincoln) alleging that Lincoln was in default under the terms of a Loan and Security Agreement (Agreement) entered into on August 26, 1965. Pursuant to the Agreement, Armstrong had made loans to Lincoln from time to time taking Lincoln's promissory notes therefor. Lincoln defaulted by failing to make payment in accordance with the terms of the notes, and Armstrong, as it was permitted to do under the terms of Paragraph 8(a) of the Agreement, accelerated the payment of all monies outstanding.

Armstrong held a valid security interest in all "paper" in Lincoln's possession, which was the only security for its loan of more than $63,000.00. Armstrong, therefore, as chief creditor asked that a receiver be appointed and that other creditors be restrained from enforcing their claims until some agreement could be reached.

An agreed order was entered on September 1, 1967 requiring, in part, that Lincoln turn over to Armstrong all records and "paper," with authority in the latter to make collections and apply them to the debt. Both parties were to seek a purchaser for the business.

Pursuant to another agreed order of October 24, 1967, Armstrong sold the business to All-State Finance Corporation with offices in Bristol, Tennessee. The order also provided that after all monies due Lincoln which were possible to collect were collected, Armstrong could file an accounting with the Court and obtain a deficiency judgment for the balance.

On May 28, 1968, Armstrong moved to add Harold and Glenn Chandler (Chandlers) as defendants since they were secretary and president of Lincoln, respectively, and had signed a guaranty which Armstrong alleged obligated them to pay the deficiency amounting to more than $26,000.00.

It is stipulated that the Agreement was signed by Armstrong in New York, and that both the Agreement and the guaranty provide that New York law shall apply. Under New York law the 12% interest on the money loaned to Lincoln, a corporation, is lawful. Twelve per cent interest is usurious and unlawful if the loans were made to the Chandlers personally. It is to be observed that the Chandlers did not sign or co-sign either the Agreement or promissory note except in their respective capacities as officers of Lincoln.

The Chandlers do not deny that guarantors of a corporate debt are estopped from raising the defense of usury under the law of New York. They contend, however, that they are principal obligors or co-makers and not guarantors of the loan. They insist that Armstrong had the right to proceed against Lincoln and them at any time and that default was not a prerequisite.

Armstrong contends that it could not proceed against the Chandlers or Lincoln until there was a default, and that the language of the guaranty clearly indicates that the Chandlers are guarantors and not co-makers.

The controlling issue in the case is whether or not the Chandlers were guarantors or co-makers of the instrument so as to entitle them to the defense of usury.

Under New York law, where a usurious loan is made to a corporation and individuals are guarantors or sureties, the individuals may not raise the defense of usury. Metz v. Taglieri, 29 Misc.2d 841, 215 N.Y.S.2d 263; McNellis v. Merchants National Bank & Trust Co. of Syracuse et al., Second Circuit, February 16, 1968, 390 F.2d 239; Rosa v. But-

terfield, 33 N.Y. 665 (1865); General Phoenix Corporation v. Cabot, 300 N.Y. 87, 89 N.E.2d 238 (1949); Alpha Financial Associates v. Dann, 18 Misc.2d 73, 186 N.Y.S.2d 554 (1959). The extent to which this rule has been accepted in New York is exemplified by the case of Leader v. Dinkler Mtg. Corp., 20 N.Y. 2d 393, 283 N.Y.S.2d 281, 230 N.E.2d 120 (1967), where the individual plaintiffs organized a corporation one day before the loan sued upon was made by the defendants to the corporation. The individual shareholders bound themselves to the defendants as endorsers and guarantors. It was admitted that the loan was made to benefit the individuals, that the corporation was organized to avoid the usury law, and that the individual plaintiffs repaid a portion of the loan directly to the lender. The Court held for the lender, stating at page 399, 283 N.Y.S.2d at page 285, 230 N.E.2d at page 123:

" * * * a loan will not be struck down as usurious merely because the purpose of creating the corporation was to avoid the usury laws. Moreover, we have in subsequent cases gone even further in sustaining such loan transactions and have held that a shareholder who binds himself as guarantor or indorser of a corporate obligation will likewise not be permitted to raise the defense of usury nor will that circumstance have the effect of avoiding the transaction on the ground of usury. This rule has prevailed even where the corporation was a mere shell having no assets other than pledged security and where it transacted no business other than serving as a conduit for the transmission of the funds from the lender to the borrower."

██ With the above rule in mind, we now turn to the language of the instrument. It is both the language in the instrument and the intention of the parties that control their rights. In the instant case the language of the instrument leaves no room for doubt that the Chandlers were intended to be guarantors:

" * * * the undersigned jointly and severally guaranty to you, your successors and assigns, the due payment and performance by client of all moneys to be paid, and all things to be done, * * * "

The Chandlers argue that the guaranty gave Armstrong the right to proceed against them at any time and that default was not a prerequisite. The Court does not agree. It is true that certain formalities are waived, but this is consistent with the Uniform Commercial Code adopted in both New York and Tennessee. Section 3–416 states in part:

"Section 3–416. *Contract of Guarantor.*

"(1) 'Payment guaranteed' or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor without resort by the holder to any other party.

* * * * * *

"(3) Words of guaranty which do not otherwise specify guarantee payment.

* * * * * *

"(5) When words of guaranty are used presentment, notice of dishonor and protest are not necessary to charge the user."

The comments to this section provide:

"An indorser who guarantees payment waives not only presentment, notice of dishonor and protest, but also all demand upon the maker or drawee * * * the liability of the indorser becomes indistinguishable from that of a co-maker * * * "

As pointed out by Pink v. Investors Syndicate Title and Guaranty Co., 246 App.Div. 172, 285 N.Y.S. 155, a guaranty agreement imports the existence of two different obligations—that of the principal debtors and that of the guarantor. The debtor is not a party to the guaranty, and the guarantor is not a party to the principal obligation.

Such is the exact situation in the present case as stipulated by the parties. The Chandlers signed the Loan and Security Agreement and the promissory note in their representative capacity as officers of Lincoln, but signed the guaranty agreement in their individual capacities.

On the basis of the stipulated facts and the entire record, this Court concludes that the defense of usury is not available to the Chandlers under the applicable New York law. The instrument does not make the Chandlers principal obligors or co-makers of the indebtedness, but instead guarantors.

It is accordingly ordered that plaintiff's motion for summary judgment be sustained and the defendants' motion for summary judgment be denied.

The parties will present an order terminating the receivership.